UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-370-CHL

**MARY ARDELLA LEWIS,**

                              **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                        **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff, Mary Ardella Lewis ("Plaintiff"). In her Complaint, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Plaintiff filed a Fact and Law Summary. (DN 15.) The Commissioner also filed a Fact and Law Summary. (DN 21.)

The Parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 14.) Therefore, this matter is ripe for review. For the reasons below, the final decision of the Commissioner is **AFFIRMED**.

**I.**     **BACKGROUND**

Plaintiff filed an application for a period of disability and disability insurance benefits on April 2, 2014. (R. at 275-76.) Plaintiff also filed an application for supplemental security income on the same day. (*Id.* at 277-83.) On March 22, 2016, Administrate Law Judge Christopher C. Sheppard (the "ALJ") conducted a hearing on Plaintiff's application. (*Id.* at 44-89.) In a decision

dated, April 28, 2016, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 21-37.) In doing so, the ALJ made these findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014. (*Id.* at 26.)
>
> 2. The claimant has not engaged in substantial gainful activity since October 26, 2013, the amended alleged onset date. (*Id.*)
>
> 3. The claimant has the following severe impairments: human immunodeficiency virus positive status (HIV+); anemia; dysfunction of sacroiliac joint; degenerative disc disease; borderline intellectual functioning; and bipolar disorder. (*Id.*)
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 27.)
>
> 5. The claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit six hours in an eight-hour workday. She can stand and/or walk six hours in an eight-hour workday, but in intervals of no more than 45 minutes continuously. She can push and pull up to the above-stated exertional limitations. The claimant can climb ramps and stairs frequently and she can climb ropes, ladders, or scaffolds occasionally. She can stoop, kneel, crouch, and crawl frequently. The claimant should avoid workplace hazards such as unprotected heights and dangerous machinery. She should avoid full-body vibration. The claimant can perform simple, routine tasks. She can maintain attention and concentration for two-hour segments over the course of the eight-hour workday. She can interact as needed with supervisors and coworkers sufficiently for task completion and she can interact with the general public occasionally. The claimant can adapt to gradual changes in the routine work environment. Her work should not require fast-paced production quotas or goals. The claimant requires oral instructions or initial demonstration. (*Id.* at 29.)
>
> 6. The claimant is unable to perform any past relevant work. (*Id.* at 35.)
>
> 7. The claimant was born on September 19, 1963 and was 45 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (*Id.*)

2

8. The claimant has a limited education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act from October 26, 2013, through the date of this decision. (*Id.* at 36.)

Plaintiff requested an appeal to the Appeals Council, which denied her request for review on April 27, 2017. (*Id.* at 1-3.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Plaintiff is presumed to have received that decision five days later on May 2, 2017. Plaintiff filed this action on June 19, 2017.

## II. DISCUSSION

The Social Security Act authorizes payments of disability insurance benefits and supplemental social security income to persons with disabilities. *See* 42 U.S.C. §§ 401 – 434, 1381-1383f (2017). Specifically, anyone who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to benefits. 42 U.S.C. § 423(a)(1); *see also Warner v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2017).

A.  **Standard of Review**

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g) (2016); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1994) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B.  **Five- Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920 (2018).  In summary, the evaluation process proceeds as follows:

(1)   Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits your physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Plaintiff's Contentions

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ did not dispute Plaintiff needed a cane, and therefore, erred in not including any corresponding limitation or explanation regarding the absence of any limitation in his RFC determination. (DN 15-1, at PageID # 1041.) Second, Plaintiff argues that the ALJ failed in his duty to develop the record by failing to respond to Plaintiff's pre-hearing request for an updated consultative examination. (*Id.*) The Court will address each contention below.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 404.1509 (2018).

1. **Plaintiff's Use of a Cane**

Plaintiff argues that the ALJ's RFC determination is contrary to law because it neither accounted for Plaintiff's need to ambulate with a cane, nor offered any explanation for why Plaintiff did not need a cane. (DN 15-1, at PageID # 1045.) The Commissioner argued in response that the ALJ's RFC finding was supported by substantial evidence.

In determining a claimant's residual functional capacity, an ALJ is required to assess all relevant evidence in the record. 20 C.F.R. 404.1545(a) (2014). However, an "RFC is meant to describe the claimant's residual abilities or what a clamant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 325, 240 (6th Cir. 2002). Plaintiff argues that the ALJ acknowledged Plaintiff's use of a cane and was therefore required to either include cane-related limitations in his RFC or offer an explanation as to why "Plaintiff would not need a cane while working on a full-time basis." (DN 15-1, at PageID # 1045.) A review of the ALJ's decision and his comments regarding Plaintiff's use of cane, as well as the associated medical evidence cited by the ALJ clarifies that the ALJ did not consider Plaintiff's use of a cane to be medically necessary and that the ALJ explicitly provided for Plaintiff's complaints of leg weakness in his RFC.

In Finding No. 5, the ALJ found the Plaintiff capable of performing "a reduced range of light work." (R. at 29.) The ALJ then described Plaintiff's subjective complaints based on her testimony at the hearing, noting that the Plaintiff had "poor balance" and "may fall without warning if standing a long time." (*Id.* at 29.) The ALJ likewise noted that Plaintiff "stat[ed] she cannot work due to inability to stand or sit for prolonged periods." (*Id.*) Further, the ALJ took notice that Plaintiff "uses a cane" and "cannot estimate standing limits, as she may fall at unpredictable

times." (*Id.* at 31.) However, the ALJ then stated that "the claimants statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

The ALJ then went on to review the medical evidence in the record. He cited to an April 20, 2015 visit with Dr. Boakye, a neurosurgeon, whose "[c]linical examination showed normal motor power in the lower extremities and normal gait." (*Id.* at 32.) The ALJ cited to a February 2, 2016 visit by Plaintiff to Dr. Siddiqui, a pain management physician, whose "[c]linical examination demonstrated some antalgic gait, but normal strength in both lower extremities." (*Id.*) The ALJ contrasted the two findings, but explicitly noted that both Dr. Boyakye and Dr. Siqqiqui agreed regarding Plaintiff's lower extremity strength. (*Id.* at 33.) The ALJ also noted that the records of Nurse Practitioner Connie Pate "refer[ed] to chronic hip pain and frequent falls," as well as that Ms. Pate had prescribed a cane to the Plaintiff on September 15, 2015. (*Id.*) The ALJ even cited to the exact page of the Record with Ms. Pate's prescription for a cane, demonstrating that he had reviewed Ms. Pate's findings and instructions for Plaintiff to use the cane secondary to falls. (*Id.* at 32 (citing *id.* at 955); *id.* at 957.) After considering the above medical evidence, the ALJ concluded, that to give "due accommodation to [Plaintiff's] severe physical impairments," Plaintiff is limited to "light work with only limited intervals on her feet and significant postural and environmental limitations." (*Id.* at 33-34.) The ALJ stated that his RFC would include "standing/walking intervals . . . to give due account to subjective complaints of leg weakness." (*Id.* at 34.) In effect, by not including a cane in Plaintiff's RFC, but making explicit accommodations for her subjective complaints of leg weakness, the ALJ found Plaintiff's cane unnecessary. Because the ALJ cited to medical evidence in support of his conclusion and plainly evaluated all the evidence in the record, including evidence regarding Plaintiff's use of a cane as

7

required, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff cites to SSR 96-9P and argues that when the record demonstrates a need for a cane, an ALJ must make findings regarding whether the cane is medically necessary and the work-related limitations resulting from the need for the device. (DN 15-1, at PageID # 1043.) The Court finds SSR 96-9P to not be controlling in this case as that ruling addresses exertional limitations and restrictions to be addressed where a claimant is limited to less than the full range of sedentary work. SSR 96-9P, 61 Fed. Reg. 34478 (July 2, 1996). Here, the ALJ determined that the Plaintiff was limited to light work, not sedentary work. Therefore, SSR 96-9P's guidelines did not apply to his decision. *See, e.g.*, *Parrish v. Colvin*, No. 3:13-01218, 2014 WL 4053397, at *10 (M.D. Tenn. Aug. 15, 2014); *Conley v. Colvin*, No. 7:13-cv-121-JMH, 2016 WL 867117, at *5 (E.D. Ky. March 2, 2016).

Accordingly, the Court finds no reversible error in the ALJ's RFC determination.

### 2. ALJ's Duty to Develop the Record

Plaintiff also argues that the ALJ violated his duty to develop the record because he failed to respond to Plaintiff's request for an additional consultative examination. (DN 15-1, at PageID # 1048.) Plaintiff states that she made a prehearing motion for a physical consultative exam to address new severe impairments that had not been considered in her previous application for benefits.[2] (DN 15-1, at PageID #1048; *see* R. at 375-77.) However, Plaintiff did not renew her request for a physical consultative exam at the hearing before the ALJ or request that the record

---

[2] As the ALJ noted in his decision, Plaintiff received an unfavorable decision from Administrative Law Judge Karen Jackson on October 25, 2013 on a previous application for benefits. (R. at 31). Judge Jackson's decision, dated October 25, 2013, is contained in the record and was considered by the ALJ pursuant to *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997). No party has argued that the ALJ erred in his consideration of Judge Jackson's prior decision or in his application of *Drummond*.

8

remain open to submit additional evidence. (R. at 44-89.) Instead, Plaintiff's representative only requested the opportunity to submit a post-hearing argument. (*Id.* at 88.) In response, the Commissioner argues that it was within the ALJ's discretion to "decid[e] that he did not need a consultative examination for assistance in evaluating Plaintiff's claim." (DN 16, at PageID # 1062).

It is well-established that an ALJ has a duty to develop the record. *See Lashley v. Comm'r of Soc. Sec.*, 708 F.2d 1048, 1052 (6th Cir. 1983). Further, an ALJ has a heightened duty to develop the record "when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures."[3] *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. App'x 113, 115 (6th Cir. 2003); *see also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th 1986). Pursuant to 20 C.F.R. § 404.1520b, if after reviewing the evidence of record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b (2014). However, an ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, though he may take additional steps to do so, including ordering a consultative valuation at the Social Security Administration's expense. *Id.* at § (c)(3). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary." *Foster v. Halter*, 249 F.3d 348, 355 (6th Cir. 2001).

In *Robertson v. Comm'r of Soc. Sec.*, 513 Fed. App'x 439 (6th Cir. 2013), the Sixth Circuit upheld an ALJ's decision not to obtain additional medical evidence, including a consultative examination from a cardiologist. The Sixth Circuit held that "the ALJ was not obligated to order a consultative examination with a cardiologist" because of the "considerable amount of medical

---

[3] The ALJ did not have a heightened duty in this case because Plaintiff was represented.

evidence in the record concerning Robertson's cardiovascular problems and his resulting functional capability, including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence." *Id.* at 441. Plaintiff has failed to demonstrate any factual inconsistency from *Robertson* and has not specifically identified any inconsistencies in the record necessitating additional evidence for the ALJ to consider. Here, the ALJ had the benefit of multiple records post-dating the prior ALJ's decision that documented Plaintiff's new impairments. For example, state agency physician Dr. Jack Reed considered Plaintiff's potential impairments of HIV, inflammatory arthritis, organic mental disorders, and affective disorders and made a determination regarding her RFC, specifically citing to Plaintiff's HIV as an environmental limitation in support of his conclusion. (R. at 190-192.) Further, the ALJ had the benefit of medical records from Plaintiff's providers that post-dated the prior ALJ decision by Judge Jackson. (*Id.* at 825-970.) Plaintiff has offered no evidence suggesting these sources were inconsistent such that the ALJ might need additional evidence to resolve any such inconsistencies.

Instead, Plaintiff contends it was error for the ALJ to base his analysis on the "raw medical data," citing to *Simpson v. Comm'r v. Soc. Sec.*, 344 Fed App'x 181, 194 (6th Cir. 2009), for the proposition that "the ALJ's lay opinion is an insufficient basis to reject expert opinion." (DN 15-1, at PageID # 1050.) Plaintiff's citation to *Simpson* is misleading. In *Simpson*, the Sixth Circuit reversed a District Court's opinion affirming the Commissioner's decision because the ALJ erred "in failing to incorporate [the claimant's] significant mental impairments into the calculation of her RFC" and did not "rely upon substantial evidence in discounting the opinions of [claimant's] treating physicians." *Simpson*, 344 Fed. App'x at 194-95. It is in its analysis of whether the ALJ's decision to substitute his own opinion for the opinions of Simpson's treating physicians that the

Sixth Circuit found the insertion of a lay opinion improper. As to Simpson's argument that an additional medical expert was needed, the Sixth Circuit found that "the ALJ did not err in failing to call a medical expert" given "the breadth and depth of the evidence in the record." *Id.* at 189. Accordingly, *Simpson* does not mandate reversal or impact the propriety of the ALJ's decision in this case.

As Plaintiff has wholly failed to demonstrate an inconsistency or insufficiency in the records before the ALJ that would necessitate additional evidence such as a consultative evaluation, the Court defers to the ALJ's decision not to obtain additional evidence. Accordingly, the Court finds no violation of the ALJ's duty to develop the record and no reversible error.

### III. CONCLUSION AND ORDER

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED**, and this action is **DISMISSED** with prejudice.

(2) A final judgment will be entered separately.

cc: Counsel of record